### EBBITT v. MILLIKEN et al.

(Supreme Court, Appellate Division, First Department.    April 7, 1905.)

MASTER AND SERVANT—SAFE APPLIANCES—DETAIL OF WORK.

In an action to recover, under Labor Law (Laws 1897, p. 467, c. 415) § 18, damages in consequence of the defendant's negligence in furnishing an insufficient snubbing post for use in hoisting materials in the construction of a building, the evidence considered, and *held* to show that the selection of a certain steel frame for snubbing purposes was a detail of the work, which the employés themselves selected; relieving defendant from liability for mistake of judgment of a foreman in directing the use of an object which proved insufficient.

Appeal from Trial Term, New York County.

Action by George Ebbitt against Edward F. Milliken and another. From a judgment entered on the verdict, and from an order denying a motion for a new trial, defendants appeal.    Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

J V. Bouvier, Jr., for appellants.
S. F. Kneeland, for respondent.

PATTERSON, J    The plaintiff was a laborer engaged, with others, in moving and hoisting material used in the construction of a building in the city of New York.    The party of laborers of which the plaintiff was one was called a "bull gang," and worked under a foreman named Auer.    The foreman was also called a "pusher."    The defendants were contractors for part of the work, and, in connection with the construction of the building, a smokestack was being erected, which was to consist of bent steel plates, to be placed one above the other, in their appropriate positions.    At the time of the accident which gives rise to this action, the plates were lying on the ground in a pile at a distance of some 40 feet from the building, and, in order to get them to the place at which they were to be used, they were swung over by means of a derrick.    It appears from the evidence that the moving was accomplished by attaching to a single plate a line extending from the boom of the derrick.    The plate was by means of that line and the derrick pulled from the pile and moved along; its motion being controlled by another line attached to the plate, by means of which it was steadied and kept from swinging.    This second line was called a "snub line." In the operation of moving this material, and in the use of the snub line, it became necessary to resort to what by way of general designation is called a "snubbing post."    That is to say, when the weight of the object being moved became so great that the person holding or operating the snub line could not by his own strength control the movement of the material, he followed the custom of taking the turn of the snub line around an object which would further steady the material being

moved. At the time mentioned in the complaint, the plaintiff was standing between the pile of steel plates and a steel door frame, which was also to be used in the construction of the building. A plate was being taken from the pile, to be moved to the point at which it was to be used; and the snub line was under the control of one Morris, also a laborer on the work. Auer, the "pusher," told Morris to take a snub around a steel door frame weighing about 900 pounds, which was lying on skids at a distance of about five feet from the steel plates. This steel door frame was thus used as a snubbing post. A snub was taken. The plaintiff was standing by the plates, and about three or four feet from the steel door frame, when the engine was started, a strain was put upon the derrick rope, the plate was dragged along the top of the pile, and the door frame was "pulled over," and struck the plaintiff on his leg, causing the injuries of which he complains. He recovered a verdict, and from the judgment entered thereon, and from an order denying a motion for a new trial, the defendants appeal.

The plaintiff's theory of the action is that the defendants, as employers, failed to furnish a proper snubbing post; that the cause of the accident was the insufficiency of the door frame for the purposes of a snubbing post; that under section 18 of the labor law, the defendants are liable for a violation of a duty to furnish a sufficient snubbing post. It is conceded that no liability would exist in this case but for the provisions of section 18 of the labor law of 1897 (Laws 1897, p. 467, c. 415). It is not necessary to consider now the contention of the defendant that the provisions of that section do not require an employer to furnish scaffolds, hoists, and other appliances for workmen, but merely require that, where the master does provide such adjuncts, contrivances, and appliances, he may not provide or cause to be provided such as are insufficient, unsuitable, or improper for the work to be performed. Nor is it necessary to consider whether, with relation to the particular work that was being done when the plaintiff was injured, the steel door frame should be considered as a mechanical appliance, within the meaning of section 18 of the labor law. The evidence is convincing upon the point that the use for a "snub" of material lying about was in this case a mere detail of the work, and that the selection of that object for the purpose of a snubbing post was a matter which rested with the workmen themselves. It is apparent from this record that the court regarded the crucial question as being whether taking a snub was a detail of the work, or whether to furnish a snub was to furnish an appliance with which to do the work. The learned judge said: "I think the whole case will turn on that question. If taking a snub was part of the work which the man was employed to do, and if the man would take a snub on his own opinion, there is no liability." In charging the jury, the learned justice did not distinctly state that the issue of fact was as to the taking of a snub being a detail of the work, although, in answer to one of the requests of the defendant to charge the jury, he said, "I do not charge you that selecting the snubbing post was a detail of the work."

Without considering several of the questions which were discussed on this appeal, the record discloses that the verdict is against the weight

of evidence concerning the selection of snubbing posts being a matter of detail of the work, or a duty incumbent upon the master. The great preponderance of evidence is to the effect that, where the movement of material is to be checked or controlled in the process of hoisting, permanent snubbing posts are not always provided by the master, and that the servants or employés or laborers themselves select that which seems to be, in their judgment, best adapted to the purpose. It may readily be understood that, in the movement of certain kinds of material, permanent snubbing posts would be necessary; but, where there is a shifting and constant change of position from point to point of building material, it is customary, according to the evidence, for the person engaged in the work to select his own snub. Martin Anderson, one of the plaintiff's witnesses, testified that snubbing is a very ordinary, everyday device, and that he had taken snubs around hydrants, or girders lying on the ground, or anything that was conveniently at hand, and that he had seen a snub taken around a man's leg. Schuchardt testified that snubbing is done wherever the particular object happens to be, and that he had seen it taken around objects convenient to the point at which the work was going on; that is, objects that would allow an easy way of tying the rope around. Waterbury, the defendants' superintendent, testified that snubs are taken around almost anything—for instance, around the hub of a wheel; anything that was handy—and any member of the gang would determine, in his judgment, whatever would answer the purpose. It was a common custom, according to this witness, for each man to select his own snubbing post, and to take a snub around anything that he thought would hold the load. Erickson testified that taking snubs is part of the work that the "bull gang" does when it is necessary, and the man who takes the snub takes it wherever the foreman tells him. Sometimes he selects the place himself, if he sees fit. Auer, the "pusher," testified that, if snubs were to be taken, they were, as a rule, to be selected by the particular man who wanted the snub. It also appeared in evidence that the master here furnished material that could be used for snubbing posts if required. The material was at hand, and was suitable for the purpose of providing snubbing posts, and shovels and picks were there, and whatever was needed to dig a hole.

I think this judgment should be reversed, and a new trial ordered, on the ground that the verdict is against the great weight of evidence, which shows that the selection of this steel frame for snubbing purposes was a detail of the work, and the defendants are not liable for a mistake of judgment on the part of Auer in directing a snub to be taken around an object which turned out to be insufficient to resist the strain put upon it.

The judgment and order should be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur.